ANNA G. FINEGAN *vs.* THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, SAMUEL CABOT INCORPORATED, claimant.

Suffolk.    May 21, 1936. — April 4, 1938.

Present: FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Assignment. Insurance,* Life: assignment. *Evidence,* Presumptions and burden of proof. *Contract,* Consideration. *Words,* "For value received," "As their interest may appear."

A statement, in an unsealed assignment executed by the insured in a policy of life insurance and by one named in the policy as beneficiary, that the assignment was "for value received," was *prima facie* evidence that the beneficiary received consideration of some kind for the assignment, and required a finding of consideration in the absence of evidence that there was none, although there was no evidence of dealings of the assignee with the beneficiary.

Under an assignment of a policy of life insurance by the insured and the beneficiary to a creditor of a corporation in which the insured was controlling stockholder "as" the creditor's "interest may appear," the "interest" was that determined as of the date of the death of the insured; and the binding effect of the assignment upon the beneficiary was not affected by the facts that it appeared from an agreement in writing between the insured and the creditor, to which the beneficiary was not a party, that the assignment was given as security for the insured's personal guaranty of his corporation's debt to the creditor and that such indebtedness by reason of that agreement was greater at the time of the insured's death than it was when the assignment was made.

An assignment of a life insurance policy by the insured and the beneficiary to a creditor of a corporation controlled by the insured, "as" the creditor's "interest may appear" and as security for the insured's personal guaranty of the corporation's debt to the creditor, was enforceable against the beneficiary although, before the death of the insured, the corporation had been adjudicated a bankrupt and the creditor had proved his claim as an unsecured creditor in the bankruptcy proceedings and had received a dividend and, more than three years before the insured's death, the corporation had been dissolved.

CONTRACT.  Writ in the Superior Court dated October 14, 1935.

The trial was before *Swift*, J.

*F. W. Crocker*, (*W. F. Coleman* with him,) for the claimant.

*R. F. Barrett*, for the plaintiff.

FIELD, J.  This is an action of contract brought against an insurance company on seven insurance policies, in each of which the plaintiff was named as beneficiary, issued by the defendant on the life of the plaintiff's husband, John C. Finegan, who died June 16, 1935.  The defendant filed a petition of interpleader under G. L. (Ter. Ed.) c. 231, § 40, in which it admitted liability for the amount claimed in the declaration, alleged that this amount was claimed by Samuel Cabot Incorporated, and that the defendant had no interest in the subject matter of the controversy, and petitioned the court to order said Samuel Cabot Incorporated, herein referred to as the claimant, to be made a defendant.  See *Dixon* v. *National Life Ins. Co.* 168 Mass. 48, 49.  The original defendant paid into court the sum of $21,979.40, the undisputed amount of its liability under the policies. The claimant answered claiming the entire fund by virtue of assignments of the policies, and, in the alternative, the sum of $7,153.51, the amount — as the parties have agreed — paid by the claimant between February 20, 1929, and February 21, 1935, as premiums and interest on loans on the policies.

There was a pre-trial hearing, and, by the terms of the report, the "pre-trial agreement between counsel may be considered . . . as part of the record."  See *Fanciullo* v. *B. G. & S. Theatre Corp.* 297 Mass. 44, 49–52. *Eckstein* v. *Scoffi*, 299 Mass. 573, 576.  Thereafter there was a trial.  (Nothing in the record suggests that the case was not tried in accordance with the "pre-trial agreement." Compare *Capano* v. *Melchionno*, 297 Mass. 1, 14–15.)  The plaintiff, at the close of the evidence, made a motion for a directed verdict in her favor in the amount of $21,979.47, and the claimant made a motion for a directed verdict in its favor in the same amount.  The judge denied both

motions and directed a verdict for the plaintiff "in the sum of $14,825.06," and for the claimant "in the sum of $7,-163.51 [*sic*]". Both the plaintiff and the claimant excepted. The plaintiff also excepted to the admission of certain evidence and the claimant excepted to the exclusion of certain evidence. The judge reported the case on the stipulation that if his ruling "with reference to the disposition of the said fund is correct an order may be issued that said $14,-825.96 be delivered to the plaintiff . . . and the sum of $7,153.51 be delivered to the . . . [claimant]," but if "the rulings . . . are not correct, then such order may be entered . . . as justice may require."

The pre-trial report was as follows: "It is admitted that the Prudential Insurance Company of America issued seven policies on the life of John C. Finegan, the dates, numbers and amounts of which are set forth in the various counts of the plaintiff's declaration. John C. Finegan died June 16, 1935. The amount due on these policies was $21,779.47 and this amount together with interest making the total amount $21,979.40 has been paid into court. The plaintiff was named the beneficiary in each of these policies and claims the entire fund as beneficiary. Samuel Cabot, Inc. claims the entire amount by virtue of assignments of each of the seven policies under date of February 26, 1929 — (which the plaintiff Finegan claims were not valid and subsisting as of the date of the death of John C. Finegan). These assignments will be produced by the defendant at the trial. No question is raised but these are each signed by both John C. Finegan and Anna G. Finegan. On March 2, 1929, John C. Finegan and Samuel Cabot Inc., entered into a written agreement which will be produced at the trial by the defendant. The issues of fact to be tried are: 1. Was there any consideration for the assignment? 2. The amount of the indebtedness from the John C. Finegan Co. to Samuel Cabot, Inc. 3. Whether at the date of the death of John C. Finegan there was any indebtedness due from John C. Finegan Co. to the Cabot Co., and whether as of the date of the death the Cabot Co. had any interest in the John C. Finegan Co. So far as the

language in the assignments, 'as their interest may appear in the John C. Finegan Co.' is concerned, the Cabot Co. agrees that the interest referred to was the interest of the Cabot Co. as a creditor of John C. Finegan Company."

The amount due on the policies was payable to the plaintiff as the beneficiary named therein unless the claimant was entitled to the whole, or a part thereof, by reason of assignments of the policies or by reason of the payment by the claimant of premiums and interest on loans on such policies. The burden of establishing its claim to the whole or any part of the amount due on the policies was on the claimant. See *Kochanek* v. *Prudential Ins. Co.* 262 Mass. 174, 179.

The effect of the ruling of the trial judge with respect to the disposition of the fund in controversy is that as matter of law the burden of proof resting on the claimant was sustained as to the amount paid by it as premiums and interest on loans, but that the agreed facts and evidence did not warrant a finding that the burden was sustained as to any larger amount. The claimant contends not only that a finding in its favor for the entire amount of the fund was warranted, but also that such a finding was required as matter of law. The plaintiff contends that the agreed facts and evidence did not require or even warrant a finding in favor of the claimant in any amount.

A finding in favor of the claimant for the entire amount of the fund paid into court was required as matter of law.

First. There were assignments of the policies to the claimant binding on the plaintiff.

The record does not disclose that the policies in question were introduced in evidence at the trial. Nor is it shown that they were delivered to the claimant. However, a separate written assignment of each of these policies, dated February 26, 1929, admittedly signed by John C. Finegan and by the plaintiff, was introduced in evidence. The case appears to have been tried on the basis that these assignments were in the possession of the claimant. They were not under seal. Each of them, purported to be signed by John C. Finegan, as the insured, and by the plaintiff, his

wife, as beneficiary, recites "For Value Received, I hereby assign and transfer unto Samuel Cabot, Inc." the policy of insurance therein referred to "upon the life of John C. Finegan of Boston, Mass. as their interest may appear in the John C. Finegan Co. . . . subject to the conditions of the said policy, and to the rules and regulations of said Company," and recites that the assignment is "made expressly subject to the lien of the Company on said policy for any indebtedness of the insured" at the time the assignment is filed with the company. Within these limitations, and others not here material, the written assignments clearly purported to assign to the claimant the rights in the policies both of the insured and of the beneficiary. It is not contended that the rights of the insured in the policies were not assigned to the claimant, subject to limitations stated in the written assignments and in the "memorandum of agreement," hereinafter referred to. There is, however, no evidence of the extent of his rights in the policies and no evidence of any provision therein empowering him to give to an assignee any rights superior to those of the beneficiary. See *Goldman* v. *Moses*, 287 Mass. 393, 395–396. So far as appears, therefore, the insured could not, by assignments made by him, take away from his wife, named as beneficiary in the policies, her rights in such policies. G. L. (Ter. Ed.) c. 175, §§ 125, 126. *Witherington* v. *Nickerson*, 256 Mass. 351. But, by assignments of the policies in which the plaintiff and the insured joined, the plaintiff's rights in such policies would pass to the assignee to the extent fixed by the assignments. *Kendall* v. *Equitable Life Assurance Society*, 171 Mass. 568. *Connecticut Mutual Life Ins. Co.* v. *Allen*, 235 Mass. 187. See also *Worthen* v. *Burgess*, 273 Mass. 437. And by signing the written instruments of assignment the plaintiff purported to join with the insured in assigning the policies.

There is no contention that any formal requisites of assignment set forth in the policies were not complied with, or that if any such requisites were not complied with the assignments were for that reason ineffective as between the plaintiff and the claimant. See *Goldman* v. *Moses*, 287

Mass. 393, 397. And properly it is not contended that an assignment binding upon the plaintiff could not have been made by an instrument in writing not under seal and not accompanied by delivery of the policy if other requirements of an assignment binding upon the plaintiff were met. See *Richardson* v. *White*, 167 Mass. 58, 60; *Herman* v. *Connecticut Mutual Life Ins. Co.* 218 Mass. 181, 185; 2 Williston, Contracts (Rev. ed.) §§ 424, 430; Am. Law Inst. Restatement: Contracts, § 157. "The important thing is the act and the evidence of intent; formalities are not material." *Cosmopolitan Trust Co.* v. *Leonard Watch Co.* 249 Mass. 14, 19. And the written assignments, admittedly signed by the plaintiff, in the possession of the claimant, named therein as assignee, were *prima facie* evidence of delivery thereof with an intention on the part of the plaintiff that such assignments should be operative according to their terms. See *Ward* v. *Lewis*, 4 Pick. 518, 519–520; *Chandler* v. *Temple*, 4 Cush. 285, 287; *Perley* v. *Perley*, 144 Mass. 104, 107; *Jones* v. *New York Life Ins. Co.* 168 Mass. 245, 246–247. This evidence was not met or controlled by the evidence that the assignments were delivered by the insured to an attorney for the claimant (though, as the record recites, there was no evidence that the insured was the agent of the plaintiff), the evidence that "Samuel Cabot, Inc., or its officers, agents and attorneys had no business dealings or conversations with Anna G. Finegan, the plaintiff, and paid nothing to said Anna G. Finegan," or any other evidence or facts agreed. There was no evidence that the written assignments were delivered to the claimant in violation of any right of the plaintiff.

1. The principal contention of the plaintiff relating to the validity or binding effect upon the plaintiff of the purported assignments of her rights in the policies to the claimant is that there was no consideration for such assignments. Indeed, according to the pre-trial report, the only issue of fact relating to the validity or binding effect of the assignments was whether there was any consideration therefor. The claimant contends that there was consideration for the assignments by the plaintiff. On this issue the claimant

must prevail. The burden of proving a consideration sufficient to make the assignments effective as between the claimant and the plaintiff rested upon the claimant and this burden as a matter of law was sustained.

The recital in each assignment that the assignment was made "For Value Received" must be regarded as a recital by the plaintiff. This recital, being in the nature of an admission by her, was *prima facie* evidence of the fact recited — that she received "value" for the assignment. A recital in a written instrument of the receipt of a stated and sufficient consideration, even in the conventional phrase "one dollar and other valuable consideration," is *prima facie* evidence of consideration, though it is not conclusive where met or controlled by other evidence, as ordinarily is permissible. *Cochran* v. *Duty*, 8 Allen, 324. *Way* v. *Greer*, 196 Mass. 237, 244–245. Am. Law Inst. Restatement: Contracts, § 82. 1 Williston, Contracts (Rev. ed.) § 115B. Compare *Farquhar* v. *Farquhar*, 194 Mass. 400, 405; *Budro* v. *Burgess*, 197 Mass. 74, 76. We think the same rule applicable to the equally conventional but less definite recital "value received." It has been said that these words in a promissory note "imported a consideration" (*Tremont Trust Co.* v. *Brand*, 244 Mass. 421, 422) and that they are *prima facie* evidence of consideration (*Noxon* v. *DeWolf*, 10 Gray, 343, 346, *Chaltas* v. *Chronis*, 261 Mass. 221, 224, see also *Burnham* v. *Allen*, 1 Gray, 496, 500), though a promissory note, by reason of its nature, even without such words, imports consideration. *Townsend* v. *Derby*, 3 Met. 363, 364. *Dean* v. *Carruth*, 108 Mass. 242, 244. In *Parish* v. *Stone*, 14 Pick. 198, 201, however, though the instrument before the court was in the form of a promissory note, it was said by Chief Justice Shaw that it "is now well settled, that to support a promise or other contract, not under seal, as a contract binding in law, there must be a legal consideration; and in the application of this rule it is quite immaterial whether the contract be by parol or in writing. The law, however, attributes so much force and effect to the formal written contract, and to the words 'value received,' as to presume, in the absence of proof,

that there was a valuable consideration for the promise."
See also *Whitney* v. *Stearns,* 16 Maine, 394, 397; *Frank* v.
*Irgens,* 27 Minn. 43, 45; *Eastern Plank Road Co.* v. *Vaughan,*
14 N. Y. 546, 555; *Thrall* v. *Newell,* 19 Vt. 202, 206. Though
the words "For Value Received" may be too indefinite to
constitute a statement of the consideration where such a
statement is necessary, they are not too indefinite to con-
stitute an admission that consideration of some kind has
been received. Compare 2 Williston, Contracts (Rev. ed.)
§ 573.

The circumstances attending the transaction by which
the plaintiff purported to join with the insured in assigning
the policies are not shown, except that there was evidence
that no representative of the claimant had any business
dealings or other conversation with the plaintiff or paid any-
thing to her. There could have been a sufficient considera-
tion without any payment to her. Consideration for an
assignment need not move to the assignor — in the ordinary
sense of those words — if furnished in accordance with a bar-
gain made by such assignor. See *Palmer Savings Bank* v.
*Insurance Co. of North America,* 166 Mass. 189, 195–196;
*Hare & Chase, Inc.* v. *Commonwealth Discount Corp.* 260
Mass. 134, 136; Am. Law Inst. Restatement: Contracts,
§ 75, subsection 2; 1 Williston, Contracts (Rev. ed.) § 113.
See also *Connecticut Mutual Life Ins. Co.* v. *Allen,* 235 Mass.
187, 190; *Worthen* v. *Burgess,* 273 Mass. 437; *Shea* v.
*Aetna Life Ins. Co.* 292 Mass. 575, 581. And such a bargain
could have been made in behalf of the plaintiff by a person
whom she had authorized or clothed with apparent authority
to do so. Nothing in the evidence met or controlled the
*prima facie* evidence of the receipt by the plaintiff of con-
sideration for the assignment of her rights in the policies to
the claimant.

Whether, in the absence of consideration for the assign-
ments by the plaintiff of her rights in the policies, these
assignments were, or could have been found to be, binding
upon her need not be decided. See *Herman* v. *Connecticut
Mutual Life Ins. Co.* 218 Mass. 181, 186–187.

2. The plaintiff bases a further contention that there was
no binding assignment by the plaintiff of her rights in the
policies upon facts disclosed by the evidence relating to a
written agreement described as a "memorandum of agree-
ment." This "memorandum of agreement" was intro-
duced in evidence subject to the exception of the plaintiff.
(The plaintiff now makes no contention that this instrument
was improperly admitted in evidence and we treat this
exception as waived.) This "memorandum of agreement"
admittedly was signed by the insured and by the claimant.
It was not signed by the plaintiff and there was no evidence
that she had anything to do with it. The record recites as
"testimony" that "On March 2, 1929, Mr. Finegan delivered
seven assignments . . . [the written assignments intro-
duced in evidence] to an attorney for Samuel Cabot, Inc.,
and Mr. Finegan signed . . . [the memorandum of agree-
ment]. As a result of this Cabot, Inc. advanced sums of
money to Finegan Company and subsequent to this agree-
ment paid premiums and interest on the seven policies. . . .
[The] credit manager of Samuel Cabot, Inc., does not say
that the execution of . . . [the written assignments] was a
separate transaction from the signing of . . . [the memoran-
dum of agreement] but says it is very intimate with the
execution of . . . [the memorandum of agreement]. He
says that . . . [the memorandum of agreement] and . . .
[the written assignments] are separate and distinct instru-
ments but says the assignments are referred to in clause four
of . . . [the memorandum of agreement] and nowhere
else and that the insurance assignments were executed
February 26, 1929." The "memorandum of agreement,"
after reciting that the insured was the "chief stockholder,
president and treasurer" of the John C. Finegan Company,
states that in consideration of the claimant's "granting a
two year extension upon the present overdue indebtedness
of the Company," and advancing certain sums of money,
the insured agreed to "personally guarantee payment of all
the present indebtedness" of the company to the claimant,
and of the indebtedness to be incurred for such advances

and, as "security for said guarantee," assigned to the claimant his interests in the insurance policies here in question and in certain shares of stock in the company.

It is the plaintiff's contention that she is not bound by this "memorandum of agreement" and, also, that by accepting it the claimant relinquished the rights, if any, which it acquired by the assignment of the plaintiff's rights under the policies. The plaintiff was not bound by the "memorandum of agreement" to which she was not a party. The claimant's rights under the plaintiff's assignments could not be enlarged by such an agreement, except as directly or indirectly the "interest" of the claimant in the John C. Finegan Company, within the meaning of the written assignments, was thereby enlarged. The rights of the claimant to the proceeds of the policies as against the plaintiff are fixed by the terms of those assignments. According to these terms, the "interest" of the claimant "in the John C. Finegan Co." is the "interest" which "may appear" — obviously meaning such "interest" determined as of the date of the death of the insured, when the policies were to be paid. The statement in *Atlas Reduction Co.* v. *New Zealand Ins. Co.* 138 Fed. 497, 504, with respect to the words "as their interest may appear," indorsed on a policy of fire insurance, when standing alone, is applicable. It was there said that these words "are plainly prospective, and refer, not to an interest existing at the time when the indorsement was written, but to such interest as may appear at the time of the loss, if any, without regard to the character of the interest, or the time when it may have arisen." See *Richardson* v. *White,* 167 Mass. 58, 60. Consequently, even if as a result, direct or indirect, of the agreement embodied in the "memorandum of agreement" the "interest" of the claimant in the John C. Finegan Company was enlarged after the assignments by the plaintiff, the binding effect of such assignments was not destroyed thereby. And the provision in the "memorandum of agreement" that the insured's interest in the policies is assigned as security for his personal guaranty of payment of the indebtedness of the John C. Finegan Company to

the claimant is not on its face, or shown by evidence to be, inconsistent with the terms of the assignments made by the plaintiff. There is nothing in the "memorandum of agreement," or elsewhere in the evidence, to show any intention on the part of the claimant to relinquish its rights under such assignments.

Second. In accordance with the terms of the plaintiff's assignments whereby the claimant is entitled to the proceeds of the insurance policies "as their interest may appear in the John C. Finegan Co." the claimant is entitled to the entire fund paid into court.

As already stated, the "interest" of the claimant "in the John C. Finegan Co." is to be determined as of the date of the death of the insured, June 16, 1935. The claimant concedes that this "interest" is "the interest of the Cabot Company as a creditor of the John C. Finegan Company." The plaintiff properly makes no contention that the "interest" referred to in the assignments does not include the "interest" of the claimant as such a creditor. See *Richardson* v. *White*, 167 Mass. 58. She contends, however, that, by reason of the bankruptcy of the John C. Finegan Company and also by reason of its dissolution, the claimant had no such "interest" at the date of the death of the insured. This contention cannot be sustained.

The parties agreed "that the open account standing on the books of Samuel Cabot, Inc. in February 1929 as being owed by John C. Finegan Company was $13,610.73. . . . that between February 23, 1929 and November 1929 there was paid by Samuel Cabot, Inc. to John C. Finegan Company or on its behalf and for its benefit, a total amount of $13,748.69; that during the same period from February to November 1929 the Finegan Company repaid the Cabot Company the sum of $2585, leaving a net amount paid on its behalf for the benefit of or to the John C. Finegan Company by Samuel Cabot, Inc. of $11,163.69." There was evidence that "The $13,610.73 indebtedness of John C. Finegan Company was carried as an account receivable in the accounts receivable ledger and on July 26, 1929 the open account was closed and notes due in October 1929,

March 1930, and March 1931 were taken in substitution of the debts previously due, and these notes which were substituted in place of the open account were entered in a notes receivable ledger. These notes have not been paid." This change in the form of the indebtedness did not affect the claimant's rights under the assignments. *Lennox* v. *Murphy*, 171 Mass. 370, 374. The aggregate indebtedness of the John C. Finegan Company to the claimant was, therefore, $24,774.42 — an amount in excess of the amount of the fund paid into court as proceeds of the policies. Apart from matters hereinafter considered, this was the claimant's "interest" in the company at the date of the death of the insured.

1. The "interest" of the claimant in the John C. Finegan Company, within the meaning of the plaintiff's assignments, was not destroyed by the bankruptcy of that company. There was evidence that "John C. Finegan Company was adjudicated a bankrupt February 24, 1931, and upon the adjudication, Samuel Cabot, Inc. filed a claim in bankruptcy as an unsecured creditor and received a dividend of $414.25 on a claim of $25,105.92." And it was agreed that there has been no discharge in bankruptcy of the company.

It is obvious, though the precise nature of the transaction in which the plaintiff's assignments to the claimant were made does not appear, that such assignments were made to protect the "interest" of the claimant in the John C. Finegan Company — since this "interest" was the measure of the claimant's right to the proceeds of the policies — and that such "interest" was the obligation of the company to the claimant, rather than the amount which could be collected on account of such obligation. It is a necessary implication from the language of the assignments that they were given as security for such obligation. Neither the filing by the claimant, in the bankruptcy proceedings, of a claim as an unsecured creditor and the receipt by the claimant of a dividend thereon, nor a discharge in bankruptcy, would have cancelled the obligation of the company to the claimant to any extent beyond the amount of the dividend received,

though the claimant's remedy against the bankrupt would have been at an end. See *Citizens Loan Association* v. *Boston & Maine Railroad*, 196 Mass. 528, 530. The present case, where there has been no discharge in bankruptcy, is not less favorable to the claimant. This case, though differing in its facts from *Champion* v. *Buckingham*, 165 Mass. 76, is not distinguishable therefrom in principle. It was there held that an assignee of a policy of insurance as security for the assignee's demands as creditor against the insured — the assignor — did not lose his rights to the proceeds of the policy by reason of the discharge of the insured in bankruptcy or by reason of the assignee's having proved his claim in the bankruptcy proceedings as an unsecured claim and having assented to the discharge. See also *McClintic-Marshall Co.* v. *New Bedford*, 239 Mass. 216, 222–223; *Wexler* v. *Davis*, 286 Mass. 142, 144.

2. The "interest" of the claimant in the John C. Finegan Company, within the meaning of the plaintiff's assignments, was not destroyed by the dissolution of the John C. Finegan Company. There was evidence that "John C. Finegan Company was dissolved by Chapter 139 of the Acts of 1932. The effective date of the Act was March 31, 1932, and three years under the Statute expired March 31, 1935."

Considerations similar to those already discussed in connection with the bankruptcy of the John C. Finegan Company are applicable to its dissolution. Though by reason of such dissolution the company ceased to exist, even for purposes of litigation, and its prior obligations to the claimant could not be enforced in legal proceedings against the company, such obligations were not so far cancelled that they cannot be used as the measure of the "interest" of the claimant in the company, within the meaning of the plaintiff's assignments, which such assignments were designed to protect. See *Thornton* v. *Marginal Freight Railway*, 123 Mass. 32, 34; *Cummington Realty Associates* v. *Whitten*, 239 Mass. 313, 324–325. See also *Boston Box Co. Inc.* v. *Rosen*, 254 Mass. 331, 334.

Third. In view of the conclusion reached it is unnecessary to consider whether the claimant has established a

right to any part of the proceeds of the policies by reason of its having paid premiums and interest on loans.

Fourth.   The only exception to evidence argued by the plaintiff relates to the admission of a conversation which the claimant's president had with the insured, prior to the execution of any written agreement with the insured, "regarding the account owed by Finegan Company to Cabot Company."   This conversation is not specifically identified in the record, but apparently was a conversation described in the record under the heading, "Summary of Testimony." Since the right of the claimant to the fund is established as matter of law without reliance upon this evidence, its admission, even if erroneous, as we do not intimate, was not prejudicial to the plaintiff.   And in view of the result of the case it is unnecessary to consider the claimant's exceptions to the exclusion of evidence.

Since the rulings of the trial judge as to the disposition of the fund were not correct, under the terms of the report that in this event "such order may be entered . . . as justice may require," judgment is to be entered in favor of the claimant, Samuel Cabot Incorporated, for the amount of the fund paid into court, subject to any appropriate orders with respect to the original defendant, The Prudential Insurance Company of America.   G. L. (Ter. Ed.) c. 231, § 40.

*So ordered.*