Kenneth HOUTZ, individually, and as administrator of the Estate of Sheryl Houtz, deceased; and Ray Ellis, individually, and as administrator of the Estate of Anna Ellis, deceased, Appellants,

v.

GENERAL BONDING & INSURANCE CO., a corporation, Appellee.

No. 5263.

United States Court of Appeals
Tenth Circuit.

July 13, 1956.

Morris K. Udall, Tucson, Ariz. (Udall & Udall, Tucson, Ariz., J. D. Weir and L. J. Maveety, Las Cruces, N. M., were with him on the brief), for appellants.

Carl H. Gilbert, Santa Fe, N. M. (John B. Dudley, Jr., Oklahoma City, Okl., William W. Gilbert, Dudley, Duval & Dudley, Oklahoma City, Okl., Gilbert, White & Gilbert, Santa Fe, N. M., were with him on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

Appellants, as plaintiffs below, filed this action in the District Court for New Mexico against appellee, General Bonding & Insurance Company, alleging that appellee had entered into a contract of liability insurance with one Walter Royer on or about September 10, 1953, providing coverage for liabilities arising out of his operation of the Chevron Cafe near Las Cruces, New Mexico. It was further alleged that on the following September 13, an explosion occurred in Royer's place of business, killing Sheryl Houtz and Anna Ellis, and that appellants, as individuals and administrators of the decedents' estates, had reduced statutory death claims to judgments against Royer, which were unsatisfied. Appellants prayed that the court determine appellee-insurer's liability under the alleged policy of insurance and render judgment for them in the amounts of the judgments held against Royer.

Appellee answered denying the existence of any contract of insurance between it and Royer, and further alleging that a policy of liability insurance had been issued by it on February 20, 1953, to one Lois Franklin and Hugh B. Smith, jointly, covering liabilities arising from their operation of the Chevron Cafe. Appellee further alleged that Royer was not a named assured in the policy issued by it and that such policy had not been transferred to Royer by the original assureds, or, if it had been so transferred, that appellee had not consented thereto and was not bound thereby. Appellee also alleged that following the explosion at the cafe on September 13, the named

insured, Lois Franklin, had called upon it to defend her in actions arising from such casualty, and that appellee had done so at considerable expense to it. Appellee prayed that complainants take nothing, and in the alternative prayed that any recovery be limited to the sum of $5,000 for each claimant and a total of $10,000 for the casualty, all as provided by the policy in question.

A jury sat in an advisory capacity. Six special interrogatories were submitted to the jury. It answered all of them favorable to appellants. It answered (1) that Floyd Coleman executed an endorsement transferring the policy to Walter Royer before the explosion of September, 1953; (2) that Coleman had actual authority himself to effect a transfer of insurable interest in the insurance policy from Lois Franklin to Walter Royer; (3) that Coleman had apparent authority to execute a valid and binding transfer of Lois Franklin's insurable interest to Royer; (4) that Lois Franklin had surrendered all of her rights under the policy and had assigned the same to Royer before the explosion; (5) that Coleman made a positive statement to Walter Royer, or to an agent of Walter Royer, which was conveyed to him before the explosion, that Coleman had made and secured a transfer of the policy to Royer; (6) that Lois Franklin, with no reservation on her part, surrendered all her rights to the policy including the right of possession to Royer.

The trial court declined to enter judgment in accordance with the special interrogatories of the jury and subsequently granted appellee's motion for judgment n. o. v. and in the alternative granted a new trial if on appeal the judgment n. o. v. should be reversed on the grounds that the jury verdicts were against the "great weight and preponderance of the evidence."

Appellants contend on appeal that there is competent evidence in the record justifying the jury's findings that the policy in question had been transferred from Franklin to Royer on September 11, 1953, by an endorsement prepared by appellee's agent, who had actual or apparent authority to effect a transfer of the policy binding on appellee. In the alternative, appellants contend that the conduct of appellee's policy-writing agent was such as to raise an estoppel against appellee, precluding it from denying insurance coverage to Royer in accordance with the terms of the Franklin policy.

On appeal, appellee concedes that the evidence is sufficient to sustain the jury's findings that its agent, Floyd Coleman, had apparent authority to effect a transfer of the policy to Royer, and that the endorsement for such purpose was executed by Coleman prior to the loss in question. It is urged, however, that the record is barren of evidence to support the finding that Lois Franklin assigned, or consented to the assignment of her policy to Royer prior to the explosion of September 13, or at any time. Appellee also denies that it is bound by the transfer endorsement executed by its agent in disregard of an express policy limitation as to the form required for such a transfer of interest under the policy. It is further contended that, under New Mexico law, an assignment of an insurance policy must be in writing by the assignor, which admittedly was not done in this case. In connection with the claimed coverage by estoppel, appellee contends that the record affirmatively shows that one of the essential requisites for an estoppel is not present in this case, in that no possible reliance on the part of Royer on any representation of appellee's agent has been shown by the appellants.

We think there was sufficient evidence to sustain the jury's answer to interrogatory No. 1 that the endorsement was executed before September 13, 1953. The endorsement carries the date of September 11, 1953. Coleman gave direct and positive testimony that he executed and mailed the endorsement prior to the explosion. In fact, appellee concedes the right of the jury to believe the endorsement was executed before the explosion. It is not necessary to determine whether

the jury correctly answered that Coleman had actual authority to transfer the policy because the Bonding Company concedes there was sufficient basis for the jury's answer that Coleman had apparent authority to transfer the policy from Mrs. Franklin to Royer. The jury's answer to questions No. 4 and No. 6 in which it answered that Mrs. Franklin surrendered all her right to the policy, consented to its assignment, and surrendered all her rights as an insured including the right of possession is a contested issue of fact.

The 6th question is somewhat equivocal. It is without dispute that Mrs. Franklin did not surrender physical possession of the policy and that she had it in her possession at all times up to the date of the explosion. The jury was, however, asked whether she had surrendered her "right of possession." This may call for somewhat of a conclusion depending upon other facts, especially those set out in question No. 4. For the purpose of this opinion, the jury's answer to question No. 6 is not too vital.

█ The crux of this appeal so far as her consent to an assignment of the policy is concerned depends upon the jury's answer to question No. 4, in which it answered that she consented to a surrender of her interest in the policy and an assignment thereof to Royer. The evidence on this question is in conflict. The evidence favorable to appellants on this question is substantially as follows. A few days before the change of ownership, Coleman discovered that a sale was pending. At that time about one-half of the year's premium on the policy had been paid. Coleman asked Mrs. Franklin "if Mr. Royer wanted to continue with the insurance," to which she answered that "she didn't know, that I could talk to him about it." In other

conversations with her, she voiced no objection to the transfer of the policy and said he could talk to Royer to see if Royer wanted it. Royer testified that in his discussions with Mrs. Franklin she suggested "that I take the insurance that she had, because it was adequate to cover the requirements under the terms of the lease and that, since there was a balance due on it, that would relieve her of having to pay any further amount on the premium, and that I would just assume the balance of the premium, of the insurance transferred over, as it was." He stated that at that conversation "I agreed to do that." Mrs. Franklin testified that she did not authorize a transfer of the policy until what she claimed was due her on the premium she had paid was paid to her. It is clear from the undisputed evidence that Royer did pay the unpaid balance due on the policy premium. It is our conclusion that there is ample testimony to support the jury's answer to question No. 4 and the ruling of the court to the contrary was erroneous.

█ Neither was the physical surrender of the policy necessary to effect a valid assignment of the policy from Mrs. Franklin to Royer.[1] While most of the cases cited in footnote 1 have dealt with some form of written assignment, the law is not different when the question of an oral assignment is present. The important thing is whether an actual assignment can be proved by other evidence, without depending upon physical delivery of the policy. In Fidelity Mutual Life Ins. Co. v. City National Bank, D.C., 95 F.Supp. 276, 281, the court said: "Any language, however informal, if it shows the intention of the owner of the chose in action to at once transfer it, so that it will be the property of the transferee, will be sufficient to vest the

1. Appeal of Colburn, 74 Conn. 463, 51 A. 139; Lincoln v. Equitable Life Assurance Soc., 124 Miss. 153, 87 So. 6; Northwestern Mut. Life Ins. Co. v. Wright, 153 Wis. 252, 140 N.W. 1078; Finegan v. Prudential Ins. Co., 300 Mass. 147, 14 N.E.2d 172, 116 A.L.R. 535; Thompson's Exec-utrix v. Thompson, 190 Ky. 3, 226 S.W. 350; Fidelity Mut. Life Ins. Co. v. City Nat. Bank, D.C., 95 F.Supp. 276; McPhail v. John Hancock Mut. Life Ins. Co., D.C., 108 F.Supp. 902; Ratsch v. Rengel, 180 Md. 196, 23 A.2d 680.

title in the assignee. No particular form is necessary. While the chose in action must be identified, no greater particularity is required than is actually necessary to do this, with the aid of the attendant and surrounding circumstances. 6 C.J.S., Assignments, § 44, p. 1092. Delivery of the insurance policy is not necessary if the assignment is proved by other satisfactory evidence." While Ratsch v. Rengel, 180 Md. 196, 23 A.2d 680, 682, seems to be to the contrary in that it states that actual delivery of the policy in case of an oral assignment is necessary, the opinion further states, "actual delivery is not required, and evidence of delivery may consist of acts, or words, or both."

The instant case presents a plausible situation where there might be a transfer without physical delivery of the assignor's policy. Coleman quite evidently had a duplicate of Mrs. Franklin's liability policy in his files, or at least all the information necessary to complete the transfer endorsement upon a transfer of interest form. The insurance company would normally reissue the liability policy in the name of the new insured. Mrs. Franklin no longer had an interest in the cafe. Little harm could result to Royer or the insurance company for her failure to surrender the policy, and there would seem little purpose in requiring physical delivery of her policy except to evidence the fact of transfer. It is our conclusion that there was sufficient evidence for the jury to have found an actual transfer of interest.

■ While conceding the correctness of the jury's finding that its agent Coleman had apparent authority to transfer the policy in question, appellee contends that such purported transfer was ineffective because not executed in conformity with the express limitations of the policy as contained in paragraph 15 which provides that "No assignment of interest under this Policy shall bind the Company until its consent is endorsed hereon." It is conceded that no consent to the transfer other than the fact that the company's agent executed it was endorsed thereon. In short, appellee asserts paragraph 15 constitutes a binding limitation upon the apparent authority of its agent to transfer the policy. The preceding paragraph 14 provides that no change shall be made in the terms of the policy "except by endorsement issued to form a part hereof, signed by the President, a Vice President, Secretary or Assistant Secretary of the Company." It is argued that the consent of the company for an assignment of interest must be under the signature of one of the officers named in the preceding paragraph. It is to be noted that paragraph 14 refers to changes in the printed terms of the policy and clearly provides how such changes shall be evidenced. An assignment of interest is not a change in the terms of the insurance contract. Neither paragraph 14 nor any other paragraph of the policy purports to define who shall act for and give consent of the company generally. The express designation of named officers in one paragraph only would tend to indicate the requirement of action by those officers is the exception rather than the rule and applies only to such changes in the policy as are set out in the special paragraph. It seems logical that a company would be more strict about waiving or changing printed terms placed into one of its policies rather than with the change in the ownership of the policy which must occur quite frequently. Cf. Prillaman v. Century Indemnity Co., 4 Cir., 138 F.2d 821, 823 (distinguishing between alterations in the terms of the policy and cancellation of the policy). The fact that assignment is covered by a separate paragraph would indicate it should be treated separate and apart from paragraph 14. In Shyowitz v. Union Indemnity Co., 104 N.J.L. 339, 140 A. 448, and other cases relied upon by appellee there was a single provision covering assignment and all other changes requiring the signature of particular officers. Normally where an agent of the insurer, with full knowledge of the facts, prepares an assignment of

one of its policies the consent of the insurer is deemed to have been given.[2]

■ But even if the interpretation urged by appellee were given to the policy, actual authority to execute the assignment may be established by the conduct of the insurer, notwithstanding a contrary provision in the policy.[3] The record shows that Coleman was held out by appellee and acted without protest as a general agent with authority to accept risks and thereby bind appellee. There was no evidence that Royer was aware of any limitation upon Coleman's authority to finally pass on accepting or rejecting risks for appellee even if such limitations were found in the agent's secret instructions from appellee or in the policy of insurance in question which was never in Royer's possession. Secret limitations on the agent's authority, inconsistent with his apparent authority and unknown to persons dealing with him, may not be invoked to deny validity of Coleman's agreement to transfer the policy to Royer, or his execution of an endorsement to that effect.[4] The agent with apparent authority to accept risks has apparent authority to transfer such policies as he issues. He also has power to waive the formal requirement for endorsement of such transfer upon the policy.[5] Coleman had executed two previous endorsements in connection with this same liability policy, neither of which contained the signature of any of the officers named in paragraph 14. Appellee's contention that the attempted assignment was void because not approved by some officer of the company must be rejected upon the finding and admission that the agent had apparent authority to transfer the policy in question.

■ Appellee alludes to New Mexico's Statutes Annotated, § 50–7–1, requiring the assignment of notes, bonds, due bills and other instruments promising to pay a sum of money to be in writing. Although no strong reliance is placed upon this statute, in any event it is our opinion that such statute has no application to this policy. The insurance policy in question is not a promissory note, bill of exchange, or other negotiable instrument, but is rather an executory contract of indemnification which can be assigned within limitations imposed by law for assignments of choses in action and any special limitations in the instrument itself which have not been waived or of which the parties have not estopped themselves from asserting by virtue of their conduct.[6]

■ Furthermore, we think the company was estopped to deny that the policy had been assigned by its agent, even if we assume that Mrs. Franklin had not consented to its assignment, conceding as it does that the evidence was sufficient to uphold the jury's finding that Coleman had apparent authority to issue and assign policies of insurance. In Chambers v. Bessent, 17 N.M. 487, 134 P. 237, the New Mexico Court set out in great detail the elements necessary to bring into play equitable estoppel. Reduced to simple terms, its holding, consistent with the general holding of other courts, is that equitable estoppel results from a course of conduct which precludes one from asserting rights he otherwise might assert against one who has in good faith relied upon such conduct to his detriment. The court did not hold that actual knowledge of facts must be had by one relying thereon for estoppel.

2. Manchester Fire Assur. Co. v. Glenn, 13 Ind.App. 365, 40 N.E. 926; see also 29 Am.Jur. 415.

3. Prillaman v. Century Indemnity Co., 4 Cir., 138 F.2d 821, 823; St. Paul Fire & Marine Ins. Co. v. Ruddy, 8 Cir., 299 F. 189, 193; Restatement, Agency § 26.

4. Restatement, Agency § 161, p. 395; § 166, p. 406.

5. Bennett v. National Fire Ins. Co. of Hartford, 235 Mo.App. 720, 143 S.W.2d 479; Springfield Fire & Marine Ins. Co. v. Simmons, 184 Okl. 323, 87 P.2d 941.

6. Restatement, Contracts § 157; 6 C.J.S., Assignments, § 45, pp. 1093–1094; 45 C.J.S., Insurance, §§ 420–423, pp. 43–46.

598

What the court said was that the facts "must be relied upon by the other party." The Bessent case was followed by the Martinez v. Cook, 56 N.M. 343, 244 P.2d 134, case. What is meant by reliance as that term was used in the Martinez case was amplified by the court in Treadwell v. Henderson, 58 N.M. 230, 269 P.2d 1108, 1112, where the court said, "Our holding in Martinez v. Cook * * * was never intended to impart to the word 'reliance' the properties of a *magic formula*." [7] It was held that reliance could be established by language which did not contain the word reliance. Reliance may be established by inferences from facts and conduct surrounding a given transaction.

Of course, without knowledge of a given state of facts, there can be no reliance. But as reliance may be inferred from the facts and circumstances, so likewise may knowledge be inferred from the facts and circumstances surrounding a given transaction. Royer had purchased this restaurant from Mrs. Franklin on which there was a lease which required that liability insurance be carried on the property. Royer knew that Mrs. Franklin had such a policy. They had talked about it and about its transfer to him. Taking the evidence most favorable to him, as we must, for the answer to this question he did not know that she might have objected to the transfer of the policy. Royer testified that he had been in the restaurant business; that this was the third restaurant he had owned; that he had always carried liability insurance coverage; and that he would have obtained other insurance had Coleman not told him he was getting coverage for him. He testified that he knew Coleman had a general insurance contract which from his knowledge of insurance would cover almost any kind of insurance.

It must be conceded that all the parties, Mrs. Franklin, Royer and Coleman, talked about and were interested in assigning this insurance. Royer had a right to believe that Coleman could transfer the insurance. All that was necessary was to get Royer's approval to the transfer. Coleman had called at the restaurant a number of times to ascertain if Royer wanted the insurance transferred. Not finding him there, he talked to the cook, Mrs. Jones, to ascertain if Royer wanted the insurance transferred. Mrs. Jones told Royer about Coleman's request and he told her to "go ahead and tell him to transfer it over, and to bill me for the difference." Mrs. Jones delivered this message to Coleman. The admitted facts are that he wanted the insurance transferred; that through his employee and agent, Mrs. Jones, he directed Coleman to transfer the insurance. True, Royer was never told that the insurance had been transferred but under these facts and circumstances Royer was warranted in believing that Coleman who admittedly had ostensible authority would, as he did, transfer and assign the policy pursuant to his direction to that effect, and that it was not necessary for him to obtain other insurance.

Finally, we are asked to reverse the order of the court granting a new trial in the alternative if the judgment for the company was reversed on appeal. The grounds for the motion for a new trial were substantially the same as for judgment, notwithstanding the answers of the jury to the special questions. We have held that there was ample evidence to support the jury's answers to the interrogatories and that the court erred in *granting judgment for the defendant notwithstanding such answers*. But it does not follow that the court committed reversible error in granting the motion for a new trial. Even if we as the trial judge might have overruled the motion for a new trial, that is not in itself sufficient for us to reverse the order granting a new trial. A trial judge is vested with a sound discretion in passing upon a motion for a new trial and his judgment will not be disturbed except in a case of clear abuse of discre-

7. Emphasis supplied.

tion. This principle is so universally recognized that no authorities will be cited in support thereof. We find no abuse of discretion in the trial court's order granting a new trial. It was proper for the court to rule on both motions at the same time.[8]

The entry of judgment n. o. v. is Reversed. The order granting a motion for a new trial is Affirmed. The cause is Remanded to the trial court for further proceedings not inconsistent with the views expressed herein.

PICKETT, Circuit Judge, concurs in the opinion with the exception of that portion which holds there was sufficient evidence to sustain the jury's answer that Lois Franklin had surrendered all her rights under the policy and had assigned the same to Royer before the explosion.

8. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147; Bailey v. Slentz, 10 Cir., 189 F.2d 406.