L. T. ZOBY, trading as L. T. Zoby & Sons, Appellant,

v.

AMERICAN FIDELITY COMPANY, a foreign corporation,

New Hampshire Fire Insurance Company, a foreign corporation,

and

Alexander M. Heron, Appellees.

No. 7324.

United States Court of Appeals Fourth Circuit.

Argued Jan. 14, 1957.

Decided March 6, 1957.

Frederick T. Stant, Jr., Norfolk, Va. (P. A. Agelasto, Jr., Norfolk, Va., on brief), for appellant.

Barron F. Black, Norfolk, Va. (Vandeventer, Black & Meredith, Norfolk, Va., on brief), for appellees.

Before PARKER, Chief Judge, and SOPER and SOBELOFF, Circuit Judges.

SOBELOFF, Circuit Judge.

This appeal challenges the correctness of orders granting defendants' motions for summary judgment on plaintiff's original complaint and amended complaint.

Regent Contracting Company defaulted on its contract with the Navy to construct, for a consideration of $338,000.-00, a steam generator at the United States Naval Air Station at Oceana, Virginia. The Navy notified Regent's sureties, the defendants, who are appellees

here, and inquired whether they would complete the work or preferred to have the Navy undertake its completion and look to them for indemnity. The latter. course was agreed upon, and it was further agreed that the sureties would seek bids and submit rcommendations to the Navy. The defendants' agent Heron, after negotiating with several contractors, received a bid of $268,785.00 from the plaintiff Zoby on August 18, 1954, and in a subsequent telephone conversation that day, he told Zoby, "It is your job." Heron communicated with the Navy that day, informing them of Zoby's bid and that it was acceptable to the sureties, who were responsible for the difference between the cost of completion and the unpaid balance of the original contract price.

On the following day, Mr. Coe, of Coe Contracting Company, who had previously submitted higher unacceptable bids, visited Heron, and the next morning, August 20, 1954, submitted a bid of $261,000.00. Thereupon, Heron notified the Navy of Coe's lower bid and recommended its acceptance; and this was ultimately done.

In his original complaint, plaintiff alleged the breach of a contract between himself and the defendant American Fidelity Company through its agent Heron by which the completion job was said to have been awarded by the defendant to the plaintiff. Considering the evidence disclosed in discovery proceedings, the District Judge granted defendant's motion for summary judgment, 137 F.Supp. 38, finding it to be undisputed that no contract had been entered into. At the same time, he granted plaintiff's request to amend by adding New Hampshire Fire Insurance Company (also a surety on Regent's original contract) as a party defendant, and alleging an additional cause of action in tort. The amended complaint alleged that the defendants, through their agent Heron, unlawfully and maliciously interfered with plaintiff's prospective contract with the Navy which, it was alleged, would have been entered into and executed but for Heron's

recommending Coe after first recommending the plaintiff. In respect to this complaint, also, defendants moved for summary judgment.

Assuming, for the purposes of the motion, that Zoby would have been awarded the contract but for Heron's interference, the Court nevertheless granted the summary judgment on the ground that such interference was privileged, inasmuch as defendant's conduct had been motivated by an "economic interest," D. C., 143 F.Supp. 763. The Court noted that the Navy found it necessary to obtain an additional allotment of $30,000.-00 for the Coe contract, which would be borne ultimately by defendants under their obligation as sureties; and had plaintiff's bid been accepted instead of Coe's, defendants' responsibility would have been for an amount $7,785.00 higher. The latter figure, it is said, represented the financial interest which privileged the interference.

I

We agree with the District Judge that on the record, it is beyond dispute that Heron made no contract awarding the job to Zoby. The Navy alone, and not the sureties, was to be the contracting party, and there is no evidence that it authorized Heron to make an award. The depositions clearly indicate that upon the Navy's inquiry Heron stated that the sureties would not undertake completion but would recommend to the Navy's Norfolk "field office" a contractor whose price was agreeable to the sureties. The final choice then rested in the discretion of the Bureau of Yards and Docks in Washington, which was not obliged to follow the sureties' recommendations, for it customarily considers, as it did in this case the contractor's ability as well as other relevant factors.

Although Zoby may have been unaware of all of these administrative details, he unquestionably knew that Heron lacked authority to award the contract. Despite the statement which he attributes to Heron—"Mr. Zoby, it is your job"—

his deposition discloses the following significant admissions:

"Q. So your contract was really with the Navy; is that right? A. Mr. Heron told me that it had to be that way; that it had to be signed with the Navy, although they would expend the money.

"Q. But your contract was with the Navy; is that correct? A. My contract had to be with the Navy at the end, because Mr. Heron was not allowed to issue a job, you see.

\* \* \* \* \* \*

"Q. Is it your position that the Navy had to accept any contractor that was offered by the surety company? A. Sir, you know better than that.

\* \* \* \* \* \*

"A. Certainly not."

In light of this concession, we think the District Judge was undeniably correct in concluding that both parties, plaintiff and Heron, knew that no contract had been made for the job on August 18.

## II

The appellant further contends, however, although it is not directly raised in the pleadings, that there was a genuine issue of fact, which merited a jury's consideration, as to whether or not, apart from any award, Heron had made a contract binding the surety company to recommend Zoby to the Navy. While such an omission in the pleadings would not necessarily be fatal, and could be supplied even at this stage of the proceedings, we think the contention without merit. The District Judge apparently felt its implication in the pleadings or in the evidence adduced by the discovery proceedings, for he said, "There was no promise or assurance on the part of Heron that only Zoby's name would be submitted." We think that this adequately reaches and disposes of the issue, for although for the purposes of a motion for summary judgment, evidence favorable to the party against whom the motion is sought must be resolved in his favor, we find nothing in the record to support the theory that Heron contracted to recommend Zoby and no one else to the Navy.

Although the plaintiff's bid and the alleged promise to recommend occurred within the span of a few short hours, it is significant that the facts said to constitute the promise to recommend occurred subsequent to plaintiff's bid. Had such a suggestion been made by Heron in negotiations prior to the submission of the bid, or had plaintiff at the time of his bid sought such a commitment, then it might fairly be a question of fact to be determined by the District Court, whether he contemplated such a promise as the price, or a part of the price, for making his offer. Instead, any promise to recommend Zoby, if made at all, was merely a subsequent event. No conduct of plaintiff contemporaneous with his bid manifested a purpose to seek such a bargain. His was merely a hope, such as is shared by all contractors, that the offer would be regarded with favor and be accepted. This was the *quid pro quo* which he sought. Hence, even assuming a promise to recommend, it would be utterly unsupported by any binding legal consideration.

## III

Regarding the cause of action in tort alleged in the amended complaint for wrongful and malicious interference with a prospective contract with the Navy, it is well settled that there may be recovery not only for interference with the performance of a contract already executed, but also for preventing the making of a contract if it would have been consummated but for the wrongful interference. Lewis v. Bloede, 4 Cir., 202 F. 7. The District Judge ruled and, we think, correctly, that assuming that the Navy would have awarded the contract to Zoby but for the defendants' interference, the interference was, under the circumstances, privileged. Where the alleged interferer is a financially interested party and such interest motivates his conduct, it cannot be said that he is an officious or malicious inter-

meddler. See Kurtz v. Oremland, 33 N. J.Super. 443, 111 A.2d 100; Restatement of Law of Torts, Sec. 769.

Assuredly the defendants had an economic interest in the award of the completion contract, for they were to be responsible for the amount by which the completion price, added to the advances made to Regent, exceeded the original contract price of $338,000.00. The depositions clearly show that to supplement the funds on hand, an additional allocation of $30,000.00 was necessary for completion, and the sureties were ultimately responsible. It was, therefore, legitimately to the interest of the defendants under their pre-existing indemnity contract to recommend the Coe bid, which was $7,785.00 lower than Zoby's.

The appellant suggests that to condone an interference on the basis of economic interest, the interferer's interest must outweigh that of the party whose "rights" are invaded, and that plaintiff's interest here was $45,000.00, while defendants' was merely $7,785.00. We do not perceive how a defendant-interferer's liability can be based upon such considerations. The concept which we think underlies the privilege is that if an individual acts under an economic interest that is substantial, not merely *de minimis,* wrongful and malicious motives are negatived, for he acts in self-protection. Justification for protecting one's financial position should not be made to depend upon a comparison of the amount of his economic interest in the subject matter with that of others. It is sufficient if the impetus for his conduct lies in a proper business interest rather than in wrongful motives.

This is not a case of a competitor seeking his own advantage by causing the breach of another's contract. Rather it it a case of one acting normally to limit his liability in a situation to which he is already a party. The defendants had an interest intertwined with that of the Navy which gave them a status entitling them to protect themselves as well as the Navy by minimizing the loss. Moreover, they would not have been acting in good faith with the Navy if they had suppressed pertinent information in respect to any bid received before a final award, for the Navy was entitled to compare bidders as well as bids.

We do not suggest that there is no limit upon the privilege of one seeking his economic interest, entitling him to interfere with the rights of others in either existing or potential contracts. It is unnecessary to define those limits; it is sufficient to say that the conduct here complained of does not transcend them.

■ The appellant further contends that there is a genuine issue of fact whether defendants had an economic interest in the subject matter and, assuming that they had such interest, whether their conduct was in fact motivated by wrongful, fraudulent intentions, rather than by their financial interest. It is well settled, however, that to resist a motion for summary judgment, the party against whom it is sought must present some evidence to indicate that the facts are in dispute, where the moving party's evidence has shown otherwise;[1] and as to the foregoing matters, the record reveals no such evidence. His bare contention that the issue is disputable will not suffice.

For the above reasons, the judgment of the Court will be

Affirmed.

1. Gifford v. Travelers Protective Ass'n of America, 9 Cir., 153 F.2d 209; Radio City Music Hall Corp. v. U. S., 2 Cir., 135 F. 2d 715; Surkin v. Charteris, 5 Cir., 197 F.2d 77; Marion County Coop. Ass'n v. Carnation Co., 8 Cir., 214 F.2d 557; Pen-Ken Gas & Oil Corp. v. Warfield Natural Gas Co., 6 Cir., 137 F.2d 871.