James R. BROWN, Administrator of the Estate of James Monroe Brown, Deceased, (Plaintiff) Appellant,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, a Corporation, (Defendant) Respondent.

No. 31414.

St. Louis Court of Appeals.

Missouri.

Feb. 18, 1964.

Hayes & Hayes, James P. Hayes, St. Louis, for appellant.

Lashly, Lashly & Miller, Paul B. Rava, St. Louis, for respondent.

RUDDY, Presiding Judge.

Plaintiff brought this action seeking a recovery of benefits allegedly due on a life

insurance policy. The Circuit Court sustained defendant's motion for summary judgment and denied plaintiff's motion for summary judgment. Plaintiff appealed from the judgment entered. However, plaintiff in his brief states that he does not wish to prosecute the appeal from that part of the order denying his motion for summary judgment.

In his petition plaintiff alleges that he is the Administrator of the Estate of his deceased father, James Monroe Brown, and that on or about the 1st day of June, 1956, defendant, in consideration of an agreed premium then paid to it, issued its group policy insuring the life of James Monroe Brown, in the amount of $1000. By the terms of said policy Julia S. Brown, wife of the said James Monroe Brown, was named beneficiary thereof. It is further alleged in said petition that Julia S. Brown died on or about the 9th day of March, 1957, which would be prior to the death of James Monroe Brown, who died on the 5th day of July, 1960, and that defendant has refused to make payment to plaintiff according to the terms of said policy.

In its answer defendant alleges that there are no conditions to be performed under the terms of said policy of insurance, since the plaintiff is not the designated beneficiary nor is the estate of the insured designated as the beneficiary. It is further alleged in said answer that:

"* * * defendant states that pursuant to a change of beneficiary application executed on June 28, 1960, Truman F. Brown, brother of the insured, was substituted as the beneficiary under said policy of insurance, and that payment in the face amount of said insurance certificate, to-wit, $1000.00, was made to the said Truman F. Brown, beneficiary, on August 26, 1960."

In answer to interrogatories propounded by plaintiff and directed to the defendant it is shown that the change of beneficiary application was not executed in the presence of an agent, servant, employee or officer of defendant or in the presence of any person acting in behalf of defendant.

The insurance certificate in question was issued under a group policy issued by defendant to the Teamsters Local No. 688, Insurance and Welfare Fund. The insured was formerly an employee of Rice-Stix, Inc. The insurance program was handled for the Union by the Unity Welfare Association, Inc., located in the Teamsters Building at 1641 South Kingshighway, St. Louis, Missouri.

On August 17, 1962, defendant filed a motion for summary judgment alleging "that there is no genuine issue of material fact concerning the alleged liability of the defendant to plaintiff." Said motion was based upon the pleadings, the depositions of Betty Tuck and Grace Brown taken by plaintiff herein, the affidavit of Dorothy Lange attached to the motion as Exhibit A, a copy of the Prudential Life Insurance Company's check for $1000, attached to said motion as Exhibit B, and the change of beneficiary form attached to the motion as Exhibit C. It is then alleged in said motion that "the foregoing documents show conclusively that the defendant is not liable to the plaintiff herein, * * *."

Exhibit A, the affidavit of Dorothy Lange, shows that she was the administrator of the Unity Welfare Association, Inc., and that the records of said Association indicate that James Monroe Brown was insured under said certificate issued by the defendant in the amount of $1000. Her affidavit further states:

"The files further indicate that the named beneficiary on said Certificate of Insurance issued on June 1, 1956 was Julia Brown, wife, but that a change of beneficiary form was executed on June 28, 1960, naming a new beneficiary, Truman F. Brown, brother, 4106 Clara, St. Louis 15, Missouri. A copy of the beneficiary form is presently located in the files of the Unity Welfare Association, Inc., and a carbon copy of same was forwarded to

Prudential Insurance Company of America. Exhibit C attached hereto is a true and exact copy of the change of beneficiary form in the files of the Unity Welfare Association, Inc."

Exhibit B was a check for $1000 to "Truman F. Brown, brother," issued by the Prudential Insurance Company of America. Exhibit C, the change of beneficiary form, shows that it was executed June 28, 1960, and that the new beneficiary named was Truman F. Brown, brother, who lived at 4106 Clara, St. Louis 15, Missouri. Under the line for "member signature" was the following "(Signed at office 6/28/60)." Above the line was the signature of the insured which was identified by Grace Brown as will be hereinafter noted. (The signature is not on the line, angles upward to the right from the line and is illegible to one unfamiliar with decedent's signature.) On the line immediately to the left of the member signature line is a line for witness and it has been signed by Betty Tuck.

On August 23, 1962, plaintiff filed a motion for summary judgment, the pertinent part of which we quote as follows:

"The signature which appears on said change of beneficiary application, copy of which is attached to defendant's Motion for Summary Judgment and marked Exhibit C, is not legible or discernible, or in any way identifiable as the signature of the said JAMES MONROE BROWN, Deceased, and renders said change of beneficiary application a nullity."

In support of said motion plaintiff thereafter referred to the deposition of Truman F. Brown, brother of said deceased, wherein he said that said signature on the change of beneficiary form did not look like that of the said James Monroe Brown, deceased, and that he knew what the signature of the said James Monroe Brown looked like. Plaintiff in his motion for summary judgment also points to the deposition of Betty Tuck, wherein she stated that she did not remember and could not identify or in any way describe the person who signed the said change of beneficiary application. Plaintiff further alleges in said motion for summary judgment that:

"4. Said change of beneficiary application was allegedly signed at the office of Unity Welfare Association on June 28, 1960, as indicated on said change of beneficiary application.

"5. The affidavit of JAMES R. BROWN and a copy of bill of Incarnate attached hereto as Exhibit A show that the same JAMES MONROE BROWN was admitted to said Incarnate Word Hospital as a patient at 5:55 P.M., on June 28, 1960."

Plaintiff in his motion for summary judgment further alleges that Grace Brown, sister-in-law of the deceased, stated in her deposition that the said deceased did not leave his residence from Sunday, June 26, 1960, until such time as he was taken to said Incarnate Word Hospital by ambulance on June 28, 1960. Said motion is concluded with the statement that there is no issue of material fact concerning the whereabouts of the said James Monroe Brown, deceased, on June 28, 1960.

Attached to plaintiff's motion was Exhibit A, which was an affidavit of James R. Brown, son of the deceased and plaintiff herein, stating that he had received the attached statement from Incarnate Word Hospital for the care and treatment of his father during his last illness, and that the statement accurately reflects the period during which his said father was confined as a patient in said hospital during his last illness. The bill of the Incarnate Word Hospital shows that the decedent was admitted as a patient in said hospital on June 28, 1960, at 5:55 P.M.

The deposition of Truman F. Brown, which was taken by plaintiff, shows that he is a brother of the deceased and was 73 years of age and that he and his wife lived with his brother at 4106 Clara Avenue.

He said that his brother had roomers living in the same house. He said that some time prior to being taken to the hospital his brother was confined to the house. When asked about his brother's health, he said: "Well, he was more or less laid up for a week before they took him to the hospital." He stated that his brother was taken to the hospital in an ambulance and thought that he left the house to go to the hospital somewhere around noontime of June 28, 1960. He said that he had never been to the Teamsters Union office at any time during the year 1960 and that he did not know where it was located. He was handed the change of beneficiary form and was asked if he recognized the signature in the lower right corner of the paper and he answered: "I don't know whose signature that is to start with. Q. Does it look like your brother's? A. No, not very much like it, not from the way I remember it. Q. This is a beneficiary change of form that has been marked Plaintiff's Exhibit Number 1, you never saw it before, is that your testimony? A. No, sir. Q. You wouldn't know what it is? A. No, I don't know what it is." When this witness was handed a paper described as "A member's record from the Unity Welfare Association" and asked, "If you see a signature up in the upper right-hand corner?" he answered, "I don't know whose the signature is. Q. All right, you never saw that signature before? A. I couldn't say that I have, did, no. Q. You know what your brother's signature looks like, don't you? A. I know what it would ordinarily look like, yes. Q. Neither one of these signatures appear to be his, is that correct? A. I wouldn't say it was or not. They don't look very good to me. Q. It doesn't look like his signature? A. I wouldn't say that, I wouldn't say it wasn't and I wouldn't say it was." Thereafter, he said the signatures on both of the cards did not appear to be the signature of his brother. He further testified that he had no occasion to observe his brother's signature during the month of June 1960, and thought it was a couple of years or so since he last witnessed his brother's writing of his signature. When asked if his brother's hand shook when he wrote within the last month or so of his life, he answered, "Probably did, I don't know."

Exhibit B, the deposition of Grace Brown, taken by the plaintiff, shows that she and her husband resided with her brother-in-law, the decedent, and that she took care of the whole house, stating that she "paid all his bills and cashed his checks, took him to the doctor and attended to him when he was sick." She testified that the decedent was taken to the hospital on Tuesday, June 28th, 1960, about 4 P.M., and that he had been confined to the house from Sunday, prior to that Tuesday, until he was taken to the hospital. Part of her interrogation in this area was as follows: "Q. Had he been in the house all that day? A. Yes, sir, up and down. * * * Q. He hadn't been out of the house that day? A. Oh, no, the man was sick." The following questions and the answers thereto appear in her deposition: "Q. When did you first learn that your husband was to get the money from the Prudential Insurance Company? A. Well, he was sitting, on that Sunday afternoon when he took this dizzy spell and reached over on my husband's knees and he said I will sign my insurance over to you. I don't know, it seemed like my husband didn't know it. He didn't answer him and I said, oh, yes. * * *" She said this took place on the Sunday before the decedent went into the hospital and she repeated that he said, "I am signing my insurance over to you." This witness said that she knew her brother-in-law's handwriting, that she had been in close contact with him and had observed his signature over a period of three years when she lived in the home with him. At one place in her testimony she said that James Monroe Brown did not have a steady hand and at another place she stated that he had no tremble in his hand, however, she said she was too busy to notice the trembling in his hand; that she had a sick man to take care of. When she was handed a copy of the change of beneficiary

form the following testimony was elicited: "Q. Do you recognize the handwriting over the membership signature on that? A. Yes, sir. Q. You recognize that signature? A. Yes, sir. Q. What date does it have on there? A. 6/28/60. Q. That's the date James Brown went into the hospital, wasn't it? A. Yes, sir. Q. You examined this copy here and your testimony is that is James Brown's signature? A. I didn't read anything, just looked at the signature. Q. Your testimony is, that is his signature? A. That's my brother-in-law's signature; I am sure it is." The witness identified the decedent's signature on another exhibit which was dated January 4, 1960, but the identity and nature of this exhibit is not disclosed in the record. Again in her redirect examination she was asked, "Q. Handing you the photo copy of the Change of Beneficiary, that's dated in June there, are you certain that that is the signature of James Brown?" and she answered, "A. That is James Brown's signature." When the witness was asked to compare the signature appearing on the change of beneficiary form with a signature appearing on the other exhibit and asked to state whether or not they were the same signatures, she said, "A. Yes, sir, they are the same. I have seen him sign his name different in size many times. This must have been written on something rough, a table or rough book because his hand didn't shake. Q. His hand wouldn't shake? A. No, not that I know of."

In the deposition of Betty Tuck, taken by plaintiff, she testified that she is a clerk typist with the insurance organization known as the Unity Welfare Association which is connected with the different Teamster Locals and has its office in the Teamsters Building on South Kingshighway Boulevard. She identified the change of beneficiary form which showed the name of the insured, James M. Brown; that he had worked at Rice-Stix; that he had retired, and that the change of beneficiary was made June 28, 1960, also showing that the new beneficiary was Truman F. Brown. She then made the following answers to the questions propounded: "Q. Underneath there there is a place marked X, it has an X mark, has it? A. Yes, sir. Q. And is there a signature there? A. Yes, sir. Q. Over there to the left (indicating) of the same paper there is a witness? A. Yes, sir. Q. Is that your signature? A. Yes, sir. Q. Were you in the Unity Welfare Office at the time this card was signed? A. Yes, sir. Q. And did you witness the individual who signed his signature as a member signature there? A. Yes, sir. Q. And have you seen that person in this office here today? A. No, sir." She could not recall any of the physical characteristics of the person whose signature she witnessed nor could she remember whether it was a young or old man or whether it was a man or woman.

After the submission of the motions for summary judgment plaintiff filed his reply by leave of court, the pertinent part of which denied the allegations of defendant's answer setting forth the change of beneficiary.

█ Defendant must show by unassailable proof that it is entitled to a summary judgment as a matter of law. Civil Rule 74.04(h), V.A.M.R.; Swink v. Swink, Mo., 367 S.W.2d 575. The proof submitted should leave no room for controversy and in this case should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances. Traylor v. Black, Sivalls & Bryson, 8 Cir., 189 F.2d 213.

█ Our duty is the equivalent of reviewing a court tried or equity case, and eventually of resolving the question of the sufficiency of the evidence to support the summary judgment and finally, if necessary, of entering such judgment as the trial court ought to have given. Swink v. Swink, Mo., 367 S.W.2d 575, 578; Civil Rules 73.01, §3.13, V.A.M.R.

█ A summary judgment may be entered after the pleadings, depositions, and admissions on file, together with the affi-

davits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Civil Rule 74.04(c), V.A.M.R.; Swink v. Swink, supra; Burgert v. Union Pacific Railroad Co., 8 Cir., 240 F.2d 207, 210; Zampos v. United States Smelting, Refining and Mining Co. et al., 10 Cir., 206 F.2d 171; Traylor v. Black, Sivalls & Bryson, supra.

■■ The purpose of Civil Rule 74.04, permitting summary judgment, is to see whether there is a genuine need for trial and to provide against the delay which sometimes comes from the formal trial of cases in which there is no substantial issue of fact and the court ultimately must render its judgment as a matter of law. It is to expedite the trial of such matters that the rule was provided. However, it is not to deny litigants a trial where a bona fide dispute of material facts exists, but if, as the rule provides, the pleadings, depositions and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, the case then may be appropriately disposed of by summary judgment. As said in many cases the question of the sufficiency of the evidence raises an issue of law and if under the evidence adduced the court would be compelled to direct a verdict for any of the parties, then said party is entitled to a summary judgment.

■ The burden rests upon the defendant in this case to show that there is no genuine issue as to any material fact and that it is entitled to summary judgment in its favor as a matter of law. Zampos v. United Smelting, Refining and Mining Co. et al., supra. All of the evidence favorable to plaintiff must be resolved in his favor. Zoby v. American Fidelity Co., 4 Cir., 242 F.2d 76. However, when a motion for summary judgment is made and supported by sufficient proof as provided in Civil Rule 74.04(c), V.A.M.R., the adverse party (plaintiff in instant case) may not rest upon the mere allegations or denials of his plead-

ing, but his response, by affidavits or as otherwise provided in the rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against him. Civil Rule 74.04(e), V.A.M.R.; Zampos v. U. S. Smelting, Refining and Mining Co. et al., supra.

Plaintiff in his first point contends that "The pleadings, the depositions of Truman Brown, Grace Brown and Betty Tuck, the affidavit and exhibits attached to the Motion of defendant, the affidavit and exhibits attached to the Motion of plaintiff, and the admissions on file, clearly indicate that there exists a genuine issue of a material fact, to-wit: Whether or not the deceased, James Monroe Brown, executed the change of beneficiary form * * *." In other words, plaintiff contends that the proof shows the existence of a controversy as to whether the deceased, James Monroe Brown, executed the change of beneficiary form. Before answering this contention of plaintiff we examine the proof relied on by defendant to show that there is no genuine issue as to a material fact and that its supporting proof is unassailable.

The facts relied on by defendant show that it had issued its policy insuring the life of James Monroe Brown in the amount of $1000. The policy was issued as the result of a group insurance plan between the defendant and the Teamsters Local 688, Insurance and Welfare Fund. It is undisputed that the insurance program is administered by the Unity Welfare Association, Inc., and in that capacity the Association handles all changes of beneficiaries. The original policy showed the wife as the beneficiary of James Monroe Brown. She predeceased him.

Grace Brown, the wife of Truman Brown and sister-in-law of the insured, in her deposition, testified that the Sunday prior to Tuesday, June 28, 1960, the decedent, insured, told her husband that he would sign his insurance over to him. In her deposi-

tion she further testified that she took care of the whole house for the decedent "paid all his bills and cashed his checks, took him to the doctor and attended to him when he was sick." In the course of her duties she had observed the decedent sign his name on various occasions over a period of three years. She did say that his hand was steady and at another place in her testimony said that he did not have a steady hand, however, adding that she was too busy to notice the trembling in his hand, explaining that she had a sick man to take care of. She positively identified the signature on the change of beneficiary form as that of James Monroe Brown. There was no equivocation on her part in regard to this fact. She did say that between the time he told her husband that he was going to sign the insurance over to him and the time that he went to the hospital, decedent had not been out of the house. However, she testified that decedent was taken to the hospital in the ambulance on Tuesday, June 28, 1960, about 4 P.M., which is approximately one hour and fifty-five minutes prior to the time the decedent was admitted to the hospital. She testified that neither she nor her husband went to the hospital with the decedent.

Dorothy Lange in her affidavit stated that she is the administrator of the Unity Welfare Association, Inc., located at 1641 South Kingshighway, St. Louis 10, Missouri, and that the records of the Association are prepared and maintained under her supervision and control. She stated that the records showed that the beneficiary on June 1, 1956, was Julia Brown, wife of the decedent, but that a change of beneficiary form was executed on June 28, 1960, naming as the new beneficiary Truman F. Brown, brother of the insured, and that the exhibit attached to her affidavit was a true and exact copy of the change of beneficiary form in the files of the Unity Welfare Association, Inc. This form shows that it is a printed form of the Unity Welfare Association "change form," which calls for the signature of the insured member and a wit-

ness to said signature. The form has printed on it "Signed at office 6/28/60" and indicates it was witnessed by Betty Tuck.

The deposition of Betty Tuck, taken by plaintiff, showed that she was a clerk-typist with the Unity Welfare Association, Inc., and she identified the change of beneficiary form and stated that the change of beneficiary was made on June 28, 1960, showing Truman F. Brown as the new beneficiary. Her testimony shows that she witnessed the signature of the person executing the change of beneficiary form and signed the change of beneficiary form as a witness to said signature and that the change of beneficiary form was executed in the office of the Unity Welfare Association, Inc.

In applying the applicable law to the facts in this case, at the very threshold of our consideration, we find there is a presumption that a named beneficiary is a legal one. Cooley's Briefs on Insurance, Second Edition, Vol. 2, page 1338. The burden is on the person asserting ineligibility to prove it. Smith v. Grand United Order of O.F., etc., Dist. G. L.N.O. 21, La.App., 136 So. 124, 125. One claiming the proceeds of a life insurance policy as against the beneficiary named therein has the burden of establishing such claim. Rohde v. Metropolitan Life Insurance Co., 233 Mo.App. 865, 111 S.W.2d 1006; Finegan v. Prudential Insurance Co., 300 Mass. 147, 14 N.E.2d 172, 116 A.L.R. 535; 29A Am.Jur., Insurance, § 1864, p. 928.

In the case of Rohde v. Metropolitan Life Insurance Co., supra, the court said: "Defendant having made payment to a person to whom it was expressly authorized to make payment, that is, to a 'relative by blood,' the burden was on plaintiff to show that the payment was made in bad faith. There being no evidence of bad faith, there was no issue for the jury, and the instruction in the nature of a demurrer to the evidence was rightly given." (111 S.W.2d 1. c. 1009.)

In the instant case plaintiff did not plead lack of good faith on the part of the de-

fendant nor is there any evidence or proof adduced by plaintiff to show lack of good faith on the part of defendant in making the payment of the proceeds due under the policy to Truman F. Brown. It was held in the Rohde v. Metropolitan Life Insurance Company case, supra, that the discretion of the insurer in making payment under policies involved ought not to be interfered with by the court except upon a clear showing of bad faith. Such a showing of bad faith is lacking in the instant case. Absent any proof on the part of plaintiff that would tend to discredit the proof we have outlined above, defendant is entitled to a judgment as a matter of law.

However, plaintiff contends in support of his assignment of error that the decedent could not have signed the change of beneficiary form at the office of the Unity Welfare Association on June 28, 1960, because he was not out of the house on that day, until he was taken to the hospital. Plaintiff's proof in support of this contention consists of the hospital record attached to the affidavit of the son of the decedent, which hospital record discloses that the insured arrived at the hospital at 5:55 P.M. The testimony on which plaintiff relies is that of Truman F. Brown, brother of the deceased; that the insured left the house at 4106 Clara at about noon on June 28, 1960, almost six hours before his arrival at the hospital and the testimony of the sister-in-law which shows that the deceased left the house at 4 P.M., about two hours before reaching the hospital. The answer to plaintiff's contention, that readily comes to mind, is that the deceased had ample time on his way to the hospital to have stopped at the office of the Unity Welfare Association, Inc., and made the change of beneficiary as shown on the change of beneficiary form. If he did not stop at the Unity Welfare Association, Inc., office on his way to the hospital, a question comes to mind: "What was he doing between the time he left the house and the time he arrived at the hospital?" for according to the testimony relied on by plaintiff he left the house at

least two hours and maybe six hours before he arrived at the hospital. He had ample time within which to have stopped at the Unity Welfare Association, Inc., office and have executed the change of beneficiary form which he had promised his brother on the previous Sunday he would do.

■ Plaintiff does not explain why he did not take the deposition of or obtain an affidavit from the ambulance driver. He makes no mention at all of this possible witness. Plaintiff in his affidavit in support of his own motion for summary judgment and in his brief before this court chose to rely on the testimony of Truman F. Brown to support this part of his contention that the insured could not have signed the change of beneficiary form at the Unity Welfare Association, Inc., office on June 28, 1960. He has thereby vouched for the testimony of this witness and is bound by it. Hadley Bros. Uhl v. Scott, Mo.App., 93 S.W.2d 276. The testimony of Truman F. Brown shows insured had ample time to have stopped by the office of the Unity Welfare Association and to make the change of beneficiary he had promised to make.

In his next contention plaintiff states that it does not appear that James Monroe Brown, the deceased, executed or signed the change of beneficiary form and claims that the file is replete with testimony and admissions which cast serious doubt on the validity of the change of beneficiary form relied on by defendant. We have shown that the execution of the change of beneficiary form was sufficiently proved by defendant. In this connection plaintiff relies principally on statements in the deposition of Truman F. Brown that the signature on the change of beneficiary form "did not appear to be that of his brother" and that he could not identify it as the signature of his brother, although he positively asserted that he knew what his brother's signature looked like. A fair appraisal of the testimony of Truman F. Brown shows that he had not seen his brother write his signature for a number of years and when shown the signature on the

change of beneficiary form his ultimate testimony shows that he would not say it was and would not say that it was not his brother's signature, his exact testimony being when he was asked if "it doesn't look like his signature?" he said, "I wouldn't say that, I wouldn't say it wasn't and I wouldn't say it was."

Plaintiff also relies upon the testimony of Betty Tuck appearing in her deposition wherein she could not recall any of the physical characteristics of the person who signed the change of beneficiary form, that is, whether he was young or old or whether it was a man or a woman. She did verify her signature appearing on the change of beneficiary form as a witness and she did witness the signing of the beneficiary form by the member whose physical description she could not give. It is not unusual for one acting in the capacity of a typist-clerk, and no doubt witnessing the signing of many papers, to fail to remember the physical description of a person who signs papers before her, which, no doubt, was a part of her daily routine. This testimony of Betty Tuck in no way casts serious doubts, as contended by plaintiff, on the validity of the change of beneficiary form relied upon by the defendant. If anything, in a measure, it supports defendant's claim in that it shows that the signature appearing on the change of beneficiary form was signed in the office of the Unity Welfare Association, Inc., on June 28, 1960, in the presence of Betty Tuck. It will be recalled that Grace Brown positively identified the signature as that of the the insured James Monroe Brown.

Plaintiff has made no charge of forgery in his pleadings and the significant thing, and rather amazing, is the failure of plaintiff, who is the son of the insured, to state under oath by deposition or affidavit or in any other manner that the signature appearing on the change of beneficiary form is not that of his father and is not genuine. In the case of Frey v. Onstott, 357 Mo. 721, 210 S.W.2d 87, l. c. 94, in commenting on the failure of a party to testify when confronted by evidence of fraud sufficient to make a

prima facie case to matters peculiarly within her knowledge, the court said: "Accordingly, we draw the inference that the truth would not have aided her cause and her testimony would have been unfavorable."

Plaintiff's contention and attempted proof falls short of discrediting the proof of defendant which, as we have said, shows that there is no genuine issue as to any material fact. Nothing plaintiff has offered raises a doubt as to the genuineness of the insured's signature as appearing on the change of beneficiary form.

Plaintiff makes the charge that the summary judgment in favor of the defendant deprives him of the benefit of testimony of handwriting experts which could have been brought before the court during a trial on the merits. This deprivation seems to have been conceived in the mind of plaintiff for the first time in the preparation of his brief on this appeal. He made no such offer in the trial court.

The testimony of a handwriting expert would only be material in the instant case where it is intended to show that the signature on the change of beneficiary form was not genuine and, therefore, a forgery. As we have pointed out, plaintiff has made no charge of forgery in his pleadings. There is a more significant answer to this contention of plaintiff and it is the duty imposed upon plaintiff by the provisions of Civil Rule 74.04(e), V.A.M.R., which makes it the duty of plaintiff, when a motion for summary judgment is made and supported as provided in the Rule, to respond, by affidavits or otherwise as provided in the Rule by setting forth therein specific facts showing that there is a genuine issue for trial. This is the duty imposed upon an adverse party to one moving for a summary judgment. Plaintiff's response, as we have pointed out, and the facts set forth therein, do not discredit defendant's proof offered in support of its motion for summary judgment. It was incumbent upon plaintiff in responding to defendant's proof to present, by deposition or affidavit, testimony of a handwriting expert which would tend to show

that there is some doubt about the genuineness of the insured's signature as appearing on the change of beneficiary form. Plaintiff did not so respond and under the above provision of the rule summary judgment shall be entered against him.

▮ It should be noted that if the abstract statement appearing in plaintiff's brief, that he could produce witnesses to refute the proof submitted by the moving party for summary judgment, was acceptable to defeat defendant's judgment, then such a procedure, if tolerated, would completely circumvent the purpose of the rule permitting summary judgments. That is why the rule provides that, " * * * an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this Rule, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him." Civil Rule 74.04(e), V.A.M.R. (Emphasis supplied.) Zoby v. American Fidelity Co., supra.

▮ The final point made by plaintiff is that he was deprived of the right "to attack defendant's evidence on cross examination." He claims that he should have the right to interrogate Truman F. Brown, Grace Brown, and Betty Tuck in open court. This contention is without merit because plaintiff took the depositions of the three witnesses and had the right to examine them fully at the time. As a matter of fact plaintiff relies upon the testimony of these three witnesses, as found in their depositions, to support his motion for summary judgment. He cannot now be heard to assert that he was denied the right to interrogate these witnesses. He also states in his brief that he "does not quarrel with the honesty of Dorothy Lange, whose affidavit was attached to defendant's motion as an exhibit, yet plaintiff most assuredly should have the right to cross-examine her as to the statements she has made in her affidavit and to test her as to credibility and character."

A glance at the affidavit of Dorothy Lange and the testimony given by Betty Tuck in her deposition indicates that both were employees of the Unity Welfare Association, Inc., and both testified to the same matters. The testimony of Dorothy Lange dealt wholly with identifying the records of the Unity Welfare Association, Inc., pertaining to the insurance policy in suit. We feel that plaintiff was not prejudiced in any manner by failing to have the opportunity to cross-examine Dorothy Lange. As we have said, her affidavit merely identified the records of the Unity Welfare Association, Inc., and, therefore, we cannot see that her credibility or character would be an issue in the case. We can conceive of no prejudice to plaintiff in the summary judgment procedure below and inasmuch as no genuine issue appears as to any material fact, the judgment of the trial court should be affirmed. It is so ordered.

WOLFE, J., and WILLIAM M. KIMBERLIN, Special Judge, concur.